**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

**SUSAN VAUGHN, PERSONAL REPRESENTATIVE**
**OF THE ESTATE OF PHIL EDWARD BLOUNT**                    **PLAINTIFF**

**V.**                                 **NO.  2:03CV00070**

**GREENE COUNTY, ARKANSAS;**
**DAN LANGSTON, INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITY AS SHERIFF OF GREENE COUNTY, ARKANSAS;**
**JOHN AND JANE DOES I - X, INDIVIDUALLY AND IN THEIR**
**OFFICIAL CAPACITIES AS OFFICERS AND EMPLOYEES OF**
**THE GREENE COUNTY SHERIFF'S DEPARTMENT**                 **DEFENDANTS**

**Consolidated With**

**SUSAN VAUGHN, PERSONAL REPRESENTATIVE**
**OF THE ESTATE OF PHIL EDWARD BLOUNT**                    **PLAINTIFF**

**V.**                                 **NO.  2:04CV00213**

**CHRISTOPHER L. GRAY, CHRIS HALL, DAVID**
**WANNER, and MICHAEL JOHNSON, individually**
**and in their official capacities as officers and employees**
**of the Greene County Sheriff's Department**              **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendants' motion for summary judgment.  (Docket # 59).  Plaintiff has

responded.  For the reasons set forth herein, the motion is granted in part and denied in part.

<u>Facts</u>

Susan Vaughn (Vaughn) brought her original civil rights action against Greene County,

Arkansas (Greene County) and Greene County Sheriff Dan Langston (Sheriff Langston) to

recover damages related to the in-custody death of her brother, Phil Edward Blount (Blount). The

defendants moved for summary judgment, with Sheriff Langston also moving for summary

judgment on the basis of qualified immunity. Vaughn moved for partial summary judgment on

the issue of the defendants' liability. This Court denied the motions. The Eighth Circuit Court of

Appeals granted qualified immunity to Defendant Dan Langston on Februray 17, 2006.  *Vaughn*

*v. Greene County, Ark., et. al.*, 438 F. 3d 845 (8th Cir. 2006).  Plaintiff filed a second complaint

on December 14, 2004, adding Chris Hall, Chris Gray, Michael Johnson and David Wanner, in

their individual and official capacities as Defendants.

 Defendants motion for summary judgment claims that: (1) Plaintiff has no proof to

support her claim against the individual capacity defendants because Plaintiff cannot offer any

proof to show that the Defendants were deliberately indifferent to any of the decedent's medical

needs which were actually known to them; (2) Plaintiff has no proof to support her claim against

the official capacity Defendants because Plaintiff has no proof of any underlying constitutional

violation; no proof of any unconstitutional county policies that were the "moving force" behind

any alleged constitutional violation, and Plaintiff's theories of negligence and vicarious liability

are not actionable; (3) Plaintiff has no proof to support her causation claim; (4) Plaintiff has no

proof to support her compensatory damages claim; (5) Plaintiff's claims against the individual

capacity Defendants should be summarily dismissed because Plaintiff added them in

circumvention of the Court's initial scheduling order; and (6) the individual capacity Defendants

are entitled to qualified immunity.

The background of this case was set forth as follows by the Eighth Circuit Court of

Appeals:

On December 23, 2001, Blount, a 46-year-old moderately obese man, was
arrested and taken to the Greene County Jail (Jail), where he was incarcerated on a
charge of first-degree sexual assault. During the Jail's intake procedure, Blount

2

completed a medical intake form, indicating he had a history of mental illness, headaches, epilepsy/seizures, ulcers, and kidney/bladder problems, but indicating he did not have a history of heart problems or high or low blood pressure. Although Blount had no medications with him upon his arrival at the Jail, Blount's mother, Carolyn Barber (Barber), later brought Blount's medications, including an anti-depressant. Inmate medication logs from the Jail, as well as written jailer statements, indicate Blount received his anti-depressant medication from December 24, 2001, until January 2, 2002, when the Jail ran out of the medication for Blount's last two dosages on that day. According to these records, Blount's new prescription did not arrive until January 4, 2002, but would not be administered until the next day's shift starting at 6:00 a.m.

On January 4, 2002, jailer Chris Hall (Hall) spoke with Blount's cellmate, who said Blount had been ingesting shampoo and engaging in other odd behavior. Hall repeated this information to Jail Sergeant Mark Harmon, who in turn informed the other jailers. Around 3:00 p.m., Blount was moved to an isolation cell to be monitored. At approximately 10:30 or 11:00 p.m., jailer Chris Gray (Gray) observed Blount vomiting in the isolation cell. Blount asked Gray for a nurse because his stomach was bothering him. Gray asked Blount if he was vomiting because of the shampoo he had ingested, but Blount did not respond. Blount was not given the opportunity to see a nurse following his request. During the night and early morning hours, Blount and the other inmates were checked by Jail personnel about once every hour.

On January 5, 2002, at about 5:15 a.m., jailer Michael Johnson (Johnson) observed Blount pacing in his cell and repeatedly drinking water and throwing up. Approximately thirty minutes later, at 5:50 a.m., Johnson went to Blount's cell to give him his medications and observed Blount lying naked on the floor of his cell. Johnson and the shift supervisor entered Blount's cell, found him unresponsive, initiated CPR, and called for an ambulance. Blount was transported to the hospital, where he was pronounced dead. An autopsy led to the determination Blount died of natural causes: arteriosclerotic cardiovascular disease, causing a heart attack that resulted in Blount's death. Detectable amounts of Blount's anti-depressant medication were found in Blount's system during his autopsy.

According to Barber, Blount called her numerous times on January 3 and 4, 2002, and stated he was nauseated and vomiting. Barber attempted to contact Sheriff Langston to ask for someone to take Blount to a doctor, but Barber was unable to reach the sheriff. Barber later went to the Jail twice on January 4, told a Jail staff member Blount was sick, and was told Blount was receiving his medications. Additionally, Vaughn, Blount's sister, called the Jail before Blount's death to tell the Jail staff he was sick. Vaughn also wrote and faxed a letter to Sheriff Langston, informing him Blount had mental problems and needed to be

placed in a different facility.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

4

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Discussion

I.  Qualified Immunity

The Eighth Circuit set forth the appropriate standard for the Court to examine the issue of qualified immunity:

> To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted. With regard to the first inquiry, "[i]t is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." Because Blount was a pretrial detainee, Vaughn's claims are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment."  Although this court has yet to establish a clear standard for pretrial detainees, we repeatedly have applied the same "deliberate indifference" standard as is applied to Eighth Amendment claims made by convicted inmates.

> "Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health." "To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk."  Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it.

*Vaughn v. Greene County, Ark.*,  438 F.3d 845, 849 -50 (8th Cir.2006)(citations omitted).

The initial inquiry is whether Blount suffered from an objectively serious medical need and whether Officers Gray, Hall, Wanner and Johnson knew of the need but deliberately disregarded it.  "A serious medical need is 'one that is so obvious that even a layperson would

5

easily recognize the necessity for a doctor's attention.' " *Id*. at 851(citations omitted).  Plaintiff

argues that the individual Defendants knew Blount was an obese 46 year old male, who was sick,

nauseous and vomiting repeatedly and ingesting Rolaids, and who had a disclosed medical

history indicating numerous medical problems including mental illness.

The only fact attributable to Defendant Hall concerning Blount is as follows: On January

4, 2002, jailer Chris Hall had a conversation with Phil Blount's cellmate, Shane Tobias, in which

Tobias told Hall that Mr. Blount had been ingesting shampoo in addition to other odd behavior.

Hall, whose shift was ending, spoke to jail Sgt. Mark Harmon and told him to move Blount to the

observation cell to watch Blount more closely." There is no evidence that Hall had notice that

Blount was suffering from a serious medical need and deliberately disregarded it.  The Court

finds that Defendant Hall is entitled to qualified immunity.

Defendants Gray, Wanner and Johnson argue that Plaintiff can offer no proof that these

Defendants knew of the decedent's chronic heart condition before his death.  The standard

however, is whether the Defendants knew Blount suffered from an objectively serious medical

need and deliberately disregarded it.    The record demonstrates the following: At approximately

10:30 or 11:00 p.m. on January 4, 2002 Gray observed Blount vomiting in the isolation cell;

Blout asked Gray for a nurse because his stomach was bothering him;  Gray asked Blount if he

was vomiting because of the shampoo he had ingested, but Blount did not respond; Blount was

not given the opportunity to see a nurse following his request; Johnson saw Blount continuing to

throw up during the night; Wanner heard Blount retching at about 5:15 a.m., January 5, 2002;

after viewing Blount in his cell, Johnson went to the booking desk along with Gray to prepare the

inmates medications for dispensation; around 5:50 a..m Johnson went to Blount's cell to give

6

him his 6:00 a.m. medications and found Blount lying in the floor of his cell naked.  These

Defendants were aware that Blount was a 46 year old mentally ill obese male with  disclosed

medical conditions, he was behaving strangely,  nauseous, vomiting and taking Rolaids.  Blount

had requested medical attention and none was provided.  Based upon these facts, the Court finds

that a genuine issue of fact exists as to whether these Defendants were deliberately indifferent to

a serious medical need suffered by Blount.  Accordingly, Defendants' Gray, Wanner and

Johnson's motion for summary judgment on the issue of qualified immunity is denied.

II.  Official Capacity Claims

A suit against a county official in his official capacity is the equivalent of a suit against

the county itself. *Doe v. Washington County,* 150 F.3d 920, 923 (8th Cir. 1998)(citations omitted).

 To establish municipal liability under 42 U.S.C. § 1983, Plaintiff must show that her

constitutional rights were violated by an "action pursuant to official municipal policy" or

misconduct so pervasive among non-policymaking employees of the municipality "as to

constitute a 'custom or usage' with the force of law." *Ware v. Jackson County,* 150 F.3d 873, 880

(8th Cir.1998) citing, *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978).   Policy is

defined "as 'an official policy, a deliberate choice or a guiding principle or procedure made by an

official with authority." *Shrum ex rel. v. Kluck*, 249 F.3d 773,779 (8th Cir. 2001).

Plaintiff argues that the testimony of the Defendants establish that there was no training

provided for the handling, screening and treatment of mentally ill inmates.  Further, the line

officers were not trained to provide or obtain medical care for physical illnesses.  Plaintiff states

that the policy proffered by Sheriff Langston was never effectively communicated to the officers

and no training was offered regarding the treatment of mentally or physically ill prisoners.  Based

upon the testimony of Hall, Plaintiff states that the policy or custom in effect was to "do whatever the circumstances called for."   Considering the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiffs have presented sufficient evidence to overcome the entry of summary judgment.

III.  Damages

In the Court Order entered November 10, 2004, the Court found that the county and Sheriff Langston in his official capacity are immune from punitive damages.  The Court extends this finding to the remaining Defendants in their official capacity.

The Court declines to reconsider its Order denying Defendants' motion to dismiss.

For the reasons set forth herein, Defendants' motion for summary judgment is granted in part and denied in part.

IT IS SO ORDERED this 10th day of August, 2007.

James M. Moody
United States District Judge